[Crim. No. 6810.   Second Dist., Div. Two.   Jan. 25, 1960.]

THE PEOPLE, Respondent, v. JOSEPH HARRELL, Appellant.

John H. Marshall for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

HERNDON, J.—In a nonjury trial appellant was convicted of possessing heroin and was sentenced to state prison.

He appeals from the judgment of conviction and states his two contentions as follows: (1) "The court erred in refusing to exclude the exhibits offered by the People following the refusal of the officers to disclose the name of an informant"; and (2) "Defendant's arrest was without reasonable and probable cause and the subsequent search and seizure was unlawful."

The instant case is wholly without novelty either in its facts or in the legal issues which it tenders. Factually, it differs only in minor detail from numerous recently reported cases dealing with the problems of search, seizure, arrest, and the use of informants in the field of narcotic law enforcement. Since a reading of the lengthy recitals of the evidence, as set forth in the briefs of appellant and respondent, discloses no material disagreement between them with respect to the state of the record, we shall attempt to summarize the essential facts as briefly as possible.

Officers assigned to the narcotics detail had kept appellant under intermittent surveillance during a period of two or three months before the date of his arrest, July 23, 1958. According to the testimony of the arresting officers, they had received information which they regarded as reliable and which was of such nature that it caused them to suspect that appellant was actively engaged in the business of selling narcotics. On May 9, 1958, one Williams, who was under arrest on a narcotics charge, informed one of the arresting officers that appellant was a large dealer in heroin, and gave a detailed description of appellant and his automobile.

The officers testified that they had received similar information from two other sources which they considered reliable. The names of Williams, and of these other two informants, were disclosed in the course of the officers' testimony on either direct or cross-examination. Among other circumstances relied upon to justify the officers in their suspicions, and in their more or less continuous surveillance of appellant, were these: they knew that appellant was wanted in New Orleans on a narcotics charge; they had followed him to a certain hotel known to be a gathering place for persons dealing in narcotics; and they had found in the possession of a person arrested on a narcotics charge a note bearing appellant's first name and an address—343 Via Los Santos, at which appellant was thought to reside.

The officers also had received information from two other reliable informants, whose identity they refused to disclose,

invoking privilege (Code Civ. Proc., § 1881, subd. 5). Information from one of these undisclosed sources was received a few hours before appellant's arrest.

On the afternoon of the arrest, the officers followed appellant to the address at 343 Via Los Santos. They parked their car a short distance from appellant's Cadillac, the appearance of which was familiar to them. Shortly thereafter they observed appellant emerge from a second story apartment and enter his car, whereupon they drove their car to a position immediately behind appellant's. As two of the officers approached appellant, he was observed to turn his head sharply to the right and look backward. Immediately thereafter he moved his partially closed hand to his mouth. Observing this movement, one of the officers shouted: "He put it in his mouth." The officers informed appellant that he was under arrest on suspicion of possession of narcotics. After taking him to a position in front of his car, appellant was told to "spit it out." Pursuant to this direction, appellant deposited in the hand of the officer a small package containing a white powder, later identified as heroin.

With a key taken from appellant's pocket, the officers entered the apartment which appellant had been seen to leave and made a search which disclosed in various parts of the apartment the usual paraphernalia of narcotic users and several packages containing in the aggregate a very considerable quantity of heroin. In conversation with the officers, appellant stated that "the stuff the officers got from him outside was his" and, also, that the narcotics found in the apartment were his. He said that he had bought four ounces a week for some time prior to the arrest, but that it was no good and that he was trying to find the person who sold it to him to get his money back. When appellant was asked why he didn't swallow the small package outside, he replied that he couldn't swallow that much and didn't intend to.

From the foregoing recital, it is manifest that, entirely apart from any information received from the unidentified informers, the arresting officers had good and valid reasons to entertain a strong suspicion that appellant was active in the business of selling narcotics. All this information in the possession of the officers, which very properly had caused them to keep appellant under observation, coupled with his furtive actions immediately before his arrest, clearly constituted the basis for a valid arrest and for the search which followed.

*People* v. *McMurray,* 171 Cal.App.2d 178 [340 P.2d 335], is a recent case which dealt with a factual situation in all material respects quite similar to that here presented. The opinion in that case, prepared by Mr. Justice Vallée, clearly states the applicable rules of law and furnishes abundant citations to the controlling precedents. The rules there stated apply with equal force here. No useful purpose would be served by their further repetition.

Affirmed.

Fox, P. J., and Ashburn, J., concurred.